# The Vacancies Act

The Vacancies Act is not the exclusive authority for temporarily assigning the duties of a Senate-confirmed office. Statutes vesting an agency's powers in the agency head and allowing delegation to subordinate officials also may be used to assign, on an interim basis, the duties of certain vacant Senate-confirmed offices.

March 18, 1998

STATEMENT BEFORE THE
COMMITTEE ON GOVERNMENTAL AFFAIRS
UNITED STATES SENATE

Mr. Chairman and Members of the Committee:

Thank you for this opportunity to present the Department's views about the Vacancies Act, 5 U.S.C. §§ 3345–3349 (1994 & Supp. III 1997).*

The principal question I want to address is whether the Vacancies Act is the exclusive statutory authority for temporarily assigning the duties and powers of a Senate-confirmed office. For decades, the Department of Justice has taken the position that statutes vesting an agency's powers in the agency head and allowing delegation to subordinate officials may be used to assign, on an interim basis, the powers of certain vacant Senate-confirmed offices. We recognize that some members of Congress, as well as the Congressional Research Service and the Comptroller General, have taken a different view of the statutes. But, as we will explain, we adhere to our long-standing interpretation.

The Vacancies Act enables officials to perform the duties of some Senate-confirmed positions, when the occupants of the positions have died or resigned or are sick or otherwise absent. Some provisions of the Act allow first assistants to serve. When the office of an agency head becomes vacant, for example, a first assistant may act under 5 U.S.C. § 3345. Under § 3346, first assistants sometimes may also act in vacant Senate-confirmed positions below the agency head, but only if the position is an office in a "bureau" and only if that "bureau" is in an executive or military department—that is, one of the fourteen departments listed at 5 U.S.C. § 101 (1994) or the Department of the Army, the Navy, or the Air Force (*id.* § 102). Section 3347 offers a procedure that may be used instead of service by a first assistant under §§ 3345 and 3346. Under § 3347, the President may detail a Senate-confirmed official from an executive or military department. Under any of these provisions, if the office becomes vacant because of death or resignation, the service by the acting official may not continue beyond 120

---

*Editor's Note. The Vacancies Act was supplanted by the Federal Vacancies Reform Act of 1998 *See* Pub. L No. 105–277, div C, tit. 1, § 151, 112 Stat 2681–611 to –616 (1998) (codified at 5 U.S.C. §§ 3345–3349d (Supp IV 1998)). Among other changes to prior law, the Federal Vacancies Reform Act of 1998 expressly eliminates the ability of an agency head to use his or her vesting-and-delegation authority to temporarily authorize an acting official 5 U.S.C § 3347(b).

days, unless the President makes a nomination for the vacant office. 5 U.S.C. § 3348.

In 1868, when Congress first passed the Vacancies Act in essentially its present form, it repealed the then-existing statutes on filling vacancies. Act of July 23, 1868, ch. 227, 15 Stat. 168, 169. Since 1868, however, Congress has enacted other statutes that, in our view, apply to vacancies at particular departments or agencies. Some of these statutes expressly refer to vacancies. Others—the category at issue here—vest the powers and duties of an agency in its head and allow delegation to subordinate officials.

The statutes for the Department of Justice illustrate this category. Under 28 U.S.C. § 509 (1994), "[a]ll functions of other officers of the Department of Justice and all functions of agencies and employees of the Department of Justice are vested in the Attorney General," with certain exceptions not relevant here. The Attorney General, under 28 U.S.C. § 510 (1994), "may from time to time make such provisions as [she] considers appropriate authorizing the performance by any other officer, employee, or agency of the Department of Justice of any function of the Attorney General." These provisions, which I will refer to as "vesting-and-delegation" statutes, enable the Attorney General to assign the duties and powers of a vacant office on an interim basis, and such assignments are not subject to the limits of the Vacancies Act.

At least since the Administration of President Herbert Hoover, Attorneys General appear to have acted on the conclusion that the vesting-and-delegation authority, derived from the 1870 law creating the Department, supplements the authority of the Vacancies Act of 1868 and permits the Attorney General to reassign the duties of such Senate-confirmed positions to other officials of the Department, outside the limits of the Vacancies Act.[1] Because of difficulties in researching old records, we have not been able to determine with certainty when the practice began. But we know that, at the very least, it goes back more than half of the Department's existence and about a third of the history of the Republic.

The statutory structure of the Department reinforces our position. In the vesting-and-delegation statutes, Congress gave the Attorney General wide discretion to assign duties and powers within the Department. Department officials below the Attorney General, for the most part, have few duties that are specifically imposed on them by statute. Instead, they carry out duties assigned by the Attorney General under 28 U.S.C. §§ 509 and 510. Sections 509 and 510 of title 28 derive from section 14 of the Department of Justice Act of 1870, see Act of June 22, 1870, ch. 150, 16 Stat. 162, 164, which became section 360 of the Revised Statutes and which was later codified at 5 U.S.C. § 311 (1926). The legislative history of the Department of Justice Act makes exactly the point that the statute did not

---

[1] *See, e.g*, Order No. 2123 (Aug. 1, 1930) (designation of an Acting Assistant Attorney General for Criminal Division who served longer than the Vacancies Act allowed); Order No 2047 (June 29, 1929) (designation of an Acting Assistant Attorney General for the Prohibition and Tax Division who also served longer than the Vacancies Act's limit).

45

divide the Department into bureaus, but let the Attorney General allocate the Department's responsibilities as appropriate. *See* Cong. Globe, 41st Cong., 2nd Sess. 3066 (1870) (Statement of Rep. Lawrence). Because the Attorney General's powers in this area are so broad and flexible, and because 28 U.S.C. § 510 specifically and clearly addresses the assignment of duties at the Department, we believe that the Attorney General has ample authority, outside the Vacancies Act, to provide for the temporary discharge of the duties of Department officers when their positions become vacant. *See* Memorandum for the Attorney General, from Theodore B. Olson, Assistant Attorney General, Office of Legal Counsel, *Re: Designation of an Acting Deputy Attorney General* at 4–5 n.3 (Jan. 27, 1984).

The Attorney General's exercise of this authority in the designation of Bill Lann Lee as Acting Assistant Attorney General in charge of the Civil Rights Division shows how the vesting-and-delegation statutes supplement the Vacancies Act. Today, there is not a single duty that, by statute, can be performed only by the Assistant Attorney General in charge of the Civil Rights Division, and only one statute (concerning authorizations under the witness protection program in criminal civil rights cases, 18 U.S.C. § 3521(d)(3) (1994)) even mentions that Assistant Attorney General specifically. Even apart from the general vesting of power in the Attorney General under 28 U.S.C. § 509, Congress did not assign to the Assistant Attorney General in charge of the Civil Rights Division the authorities now exercised by that officer. Instead, Congress placed those authorities in the hands of the Attorney General herself and left it to her to decide who in the Department should carry out those duties. The Assistant Attorney General in charge of the Civil Rights Division accordingly exercises only the power that the Attorney General chooses to give him. *See* 28 C.F.R. § 0.50 (1997).[2] It would be anomalous indeed if the occurrence of a vacancy lessened her authority to assign duties in the way that best promotes the efficiency of the Department.[3]

We acknowledge that there are disagreements with our long-held legal view. Three major arguments have been advanced, to challenge our position. The first is that a provision of the Vacancies Act, 5 U.S.C. § 3349, makes that statute the exclusive means of designating an acting official in a vacant Senate-confirmed position and that Congress affirmed this conclusion when it amended the Vacancies Act in 1988. *See* Pub. L. No. 100–398, § 7, 102 Stat. 985, 988 (1988). The second is that our view of the law would permit the executive branch to evade the Senate's role of advice and consent. The third is that our interpretation, in effect, would nullify the Vacancies Act. We dispute each of these arguments.

---

[2] When the office of Assistant Attorney General is vacant, the Attorney General by regulation has assigned the duties set out in 28 C.F.R. § 0.50 to the ranking Deputy Assistant Attorney General or such other official as she designates. *Id* § 0 132(d).

[3] *See United States v. Giordano*, 416 U.S. 505, 513–14 (1974) (given 28 U.S.C. § 510, the argument "that merely vesting a duty in the Attorney General . . . evinces no intention whatever to preclude delegation to other officers in the Department of Justice, including those on the Attorney General's own staff" is "unexceptionable" as a general proposition, although in the particular instance the statute conferring the specific duty restricted delegation).

Section 3349, in its present form, states that "[a] temporary appointment, designation, or assignment of one officer to perform the duties of another under §§ 3345 or 3346 of this title may not be made otherwise than as provided by those sections, except to fill a vacancy occurring during a recess of the Senate." [4] When Congress amended the Vacancies Act in 1988, the Senate Committee asserted its belief that this "present language, however old, makes clear that the Vacancies Act is the exclusive authority for the temporary appointment, designation, or assignment of one officer to perform the duties of another whose appointment requires Senate confirmation." S. Rep. No. 100–317, at 14 (1988).

The Committee Report, by its terms, relies on the "may not be made otherwise" language of § 3349 for the conclusion that the Vacancies Act is the exclusive means for filling vacancies in Senate-confirmed offices. But even the Committee Report concedes that the Vacancies Act is not exclusive when there is "specific statutory language providing some other means for filling vacancies." S. Rep. No. 100–317, at 14. If the "may not be made otherwise" language were "clear" and excluded *all* other statutory means for filling vacancies, this exception recognized by the Senate Report would not exist. The disagreement, therefore, is not truly whether the Vacancies Act is exclusive, but whether vesting-and-delegation statutes are among those that supplement or displace the Vacancies Act.

The Department has long believed that vesting-and-delegation statutes, as well as statutes that name particular positions, may be used to assign the duties of vacant offices despite § 3349. Section 3349 derives from the Vacancies Act of 1868. Vesting-and-delegation statutes specifically applicable to particular departments were enacted after the Vacancies Act and supplement it, and § 3349 could not preclude later Congresses from granting this expanded authority.[5]

In our view, the 1988 Senate Report did not—indeed, could not—alter the law in this respect. In 1988, Congress neither amended nor even reenacted 5 U.S.C. § 3349. As Assistant Attorney General Barr wrote in 1989, the Senate Report is "subsequent legislative history," by which a congressional committee cannot "alter the proper construction of a statute." *Application of Vacancy Act Limitations to Presidential Designation of an Acting Special Counsel*, 13 Op. O.L.C. 144, 146 (1989).[6]

---

[4] The equivalent provision from the 1868 statute stated that "no appointment, designation, or assignment otherwise than as is herein provided, in the cases mentioned in the first, second, and third sections of this act, shall be made except to fill a vacancy happening during the recess of the Senate." 15 Stat. at 168 Congress enacted the present language in 1966, but the change was not intended to be substantive *See* S Rep No 89–1380. at 18 (1966)

[5] Under our view, the "may not be made otherwise than as provided" language of § 3349 still has meaning The language supplies a rule of construction for the Vacancies Act It excludes arguments that substantial compliance can satisfy the statute, but does not bar the use of other statutory authorities

[6] In *Pierce v Underwood*, 487 U S 552 (1988), a committee report interpreted a provision in the Equal Access to Justice Act that Congress was in the process of reenacting The Supreme Court dismissed the interpretation.

If this language [from the committee report] is to be controlling upon us, it must be either (1) an authoritative interpretation of what the 1980 statute meant, or (2) an authoritative expression of what the 1985 Congress intended It cannot, of course, be the former, since it is the function of the courts and not the Legislature, much less a Committee of one House of the Legislature, to say what an enacted statute means

Continued

Nor does the statement in the Senate Report become any more authoritative because Congress amended other sections of the Vacancies Act in 1988. On the contrary, Congress's amendment of other sections highlights its decision not to amend 5 U.S.C. § 3349. If Congress is to legislate, both houses must enact language that is presented to the President. *INS v. Chadha*, 462 U.S. 919 (1983). Here, in the face of a venerable administrative construction that could have been reversed through the enactment of just a few words, Congress did not touch the relevant portion of the Vacancies Act.

Our interpretation does not depreciate the Senate's role of advice and consent. Although, under our view of a vesting-and-delegation statute, there is no precise limit on the time during which an official may carry out the duties of a vacant Senate-confirmed office, our view does not mean that such an office may remain unfilled indefinitely. The President has a duty to make a nomination. The duty comes from law, indeed from the nation's highest law, the Constitution, which declares that the President shall nominate, and by and with the advice and consent of the Senate appoint, the principal officers of the United States. U.S. Const. art. II, § 2, cl. 2. Both the executive and legislative branches owe an obligation to perform their constitutional roles.

Finally, our position that vesting-and-delegation statutes permit the assignment, on an "acting" basis, of a vacant position's duties and powers does not nullify the Vacancies Act. The Vacancies Act continues to provide the legal authority invoked by the executive branch in a variety of circumstances. It confers the authority to fill the highest position at most agencies. It may offer the most efficient means for temporarily filling a vacant Senate-confirmed position at one department with an official from another, and it is generally the only legal authority by which the President himself can put an acting, rather than permanent, official in place within an executive department. Vesting-and-delegation statutes give authority to agency heads; the Vacancies Act gives authority to the President. Furthermore, the Vacancies Act creates an "automatic" procedure by which first assistants may act in vacant positions, without the need for standing regulations or individual orders issued under vesting-and-delegation statutes. Of course, when

---

Nor can it reasonably be thought to be the latter—because it is not an explanation of any language that the 1985 Committee drafted, because on its face it accepts the 1980 meaning of the terms as subsisting, and because there is no indication whatever in the text or even the legislative history of the 1985 reenactment that Congress thought it was doing anything insofar as the present issue is concerned except reenacting and making permanent the 1980 legislation

*Id* at 566–67 (Scalia, J.). For similar reasons, the 1988 Senate Report cannot be an authoritative expression of an earlier Congress's intent regarding 5 U.S.C. § 3349. Moreover, in contrast to the situation in *Pierce*, Congress did not even reenact 5 U.S.C. § 3349 in 1988.

these advantages lead to a use of the Vacancies Act, the authority conferred by the Vacancies Act carries with it the time limits of 5 U.S.C. § 3348.

JOSEPH N. ONEK
*Principal Deputy Associate Attorney General*

DANIEL KOFFSKY
*Special Counsel*
*Office of Legal Counsel*